690 So.2d 568 (1996)
Marvin Barnett JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 84014.
Supreme Court of Florida.
December 26, 1996.
Rehearing Denied March 25, 1997.
*569 Lynn A. Williams, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Richard B. Martell, Chief, Capital Appeals, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Marvin Barnett Jones. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Jones purchased a used automobile pursuant to an installment purchase contract from Ezra Harold Stow, the owner of San Pablo Motors in Jacksonville, Florida. The following month, Jones returned the car to Stow because of a "blown engine." Stow and Jones entered into an agreement to rebuild the engine for $1,500. Jones agreed to pay Stow $800 up front and Stow agreed to finance the balance. When the repairs were completed, Stow asked for $800, but Jones instead gave Stow a check for $4,200 to pay off the entire amount owed for the car and repairs and drove the car off the lot.
At the time Jones wrote the check, he had been unemployed for over a year and knew that he only had five dollars in his bank account and had previously bounced six other checks. Ezra Stow was notified by the bank that Jones' check had bounced. At Ezra Stow's request, Monique Stow, Stow's twenty-two-year-old daughter, phoned Jones. Jones agreed to come to San Pablo Motors on March 3, 1992, and make good on the check. Jones arrived at San Pablo Motors at about 6 p.m. on March 3. Jones went into the trailer where Ezra Stow's office was located and told Stow he had to get something from his car.
Jones returned to the trailer with a .25 caliber automatic pistol and shot Monique Stow while she was washing her hands in the bathroom. Jones shot her once between the eyes and again behind her left ear. Stow heard the shots and started to reach for his gun. Jones rushed into Stow's office and aimed his gun to shoot Stow in the face. Stow threw up his arm as Jones fired and the bullet went through his forearm and then grazed his head. Stow fell to the floor behind his desk, momentarily unconscious. Jones then came around the desk and shot Stow a second time. The bullet entered Stow's cheek, broke his jaw and lodged in his neck. Jones then took the papers for the car from Stow's desk and fled the murder scene. Ezra Stow could not speak due to his injuries, but prior to being taken to the hospital he identified Jones by gestures and writing. Ezra Stow survived his injuries but Monique Stow died later that night.
At trial, Jones testified that Ezra Stow had originally agreed to take the $4,200 check and hold it until Jones could put some money in the bank to cover the check. Jones stated that when he went to San Pablo Motors on March 3 and paid Ezra Stow $4,200 in cash to make good on the bounced check, Stow became angry and requested an additional $2,000. Jones stated that Stow then began to pull out a gun and that he then rapidly shot Stow in self-defense. Jones then got sick at the sight of Stow and went to the bathroom to vomit. He testified that he heard a noise in the bathroom and reflexively shot Monique.
The jury found Jones guilty of first-degree murder of Monique Stow and attempted first-degree murder of Ezra Stow. At the sentencing phase, the jury recommended death by a vote of nine to three. The trial court found that the following aggravators applied to Jones: (1) a previous conviction for a violent felony based on the contemporaneous conviction for attempted first-degree murder of Ezra Stow; (2) that the murder of Monique Stow was committed in a cold, calculated, and premeditated manner; and (3) that the murder of Monique Stow was committed *570 for pecuniary gain. The trial court also found that the following mitigators applied: (1) Jones had no significant history of prior criminal activity and (2) aspects of his character and record, namely: that he served eight years in the Navy in responsible positions and with commendations and an honorable discharge, that he is married with two children that he and his wife supported, that during his formative years he had the advantage of a secure middle class home with successful parents, that there was no evidence that he suffered any material, spiritual, or moral privation, and that Jones' parents were supportive, hard-working, industrious and successful. The trial court found that the three aggravating circumstances in the aggregate outweighed the two mitigating circumstances and followed the jury's recommendation that Jones be sentenced to death.
Jones raises the following four issues on appeal: (1) the trial court erred in finding that the murder was committed for pecuniary gain and in instructing the jury on pecuniary gain; (2) the trial court erred in giving the standard jury instruction to define the cold, calculated, and premeditated aggravating circumstance; (3) the trial court erred by finding the aggravating circumstance of cold, calculated, and premeditated; and (4) the death sentence imposed in the case at bar is disproportionate.

Guilt Phase
Although Jones does not raise any challenges to the guilt-phase portion of the proceedings below, we have reviewed the record and find that Jones' convictions for first-degree murder and attempted first-degree murder are adequately supported by the evidence.

Penalty Phase
Jones contends that the evidence was insufficient to prove the pecuniary gain aggravator beyond a reasonable doubt because it failed to exclude a reasonable hypothesis that he entered the car dealership merely to work out an agreement with Ezra Stow regarding the car. Based on the evidence presented at the trial, the trial court specifically found that Jones had a plan to murder Ezra and Monique Stow and take the car papers, thus eliminating his financial responsibility and allowing him to keep the car. The trial court thus concluded that the attempted murder of Ezra Stow was for pecuniary gain and that Jones murdered Monique Stow to remove an obstacle to her father's murder and to eliminate a witness.
We have previously held that the pecuniary gain aggravator is applicable in cases where "the murder was motivated, at least in part, by a desire to obtain money, property or other financial gain." Finney v. State, 660 So.2d 674, 680 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996). Although Jones already had physical possession of the car at the time of the crimes, based on the evidence in this case there is no reasonable hypothesis other than that Jones murdered Monique Stow and attempted to murder Ezra Stow in order to obtain ownership of the car and to resolve the problem over the dishonored check. The fact that the car papers were missing from Ezra Stow's desk after the murder and attempted murder support this finding as does the fact that after committing the crimes Jones disposed of the car papers and the gun and hid the car.
We agree that killing for the purpose of obtaining a car constitutes commission of a murder for pecuniary gain and that this aggravating factor is present in this case. See Jones v. State, 612 So.2d 1370, 1375 (Fla.1992) (pecuniary gain aggravator properly found where murder was committed to steal victim's truck), cert. denied, 510 U.S. 836, 114 S.Ct. 112, 126 L.Ed.2d 78 (1993); Medina v. State, 466 So.2d 1046, 1050 (Fla. 1985) (pecuniary gain aggravator properly found where murder was committed to obtain victim's car).
Jones next asserts that the instruction given to the jury for the cold, calculated, and premeditated (CCP) aggravator was unconstitutionally vague pursuant to this Court's decision in Jackson v. State, 648 So.2d 85 (Fla.1994). In Jackson, we rejected a challenge to the statutory CCP aggravator itself, but ruled that the jury should receive more expansive instructions defining the terms *571 "cold," "calculated," and "premeditated" in order to give content to the aggravator. Id. at 87, 89. The trial court below did not have the benefit of Jackson when it instructed the jury on the CCP aggravator because we did not issue our decision in Jackson until approximately two months after Jones' sentencing hearing. Jones' jury was therefore given the then-standard jury instruction for the CCP aggravator rather than the expanded instruction we adopted in Jackson. However, we have held that claims for improper CCP instructions brought pursuant to Jackson are procedurally barred unless a specific objection was made at trial which attacked the CCP instruction by either submitting a limiting or alternative instruction or by objecting to the instruction as worded. Crump v. State, 654 So.2d 545, 548 (Fla.1995). See also Archer v. State, 673 So.2d 17, 19 (Fla.) ("Claims that the instruction on the cold, calculated, and premeditated aggravator is unconstitutionally vague are procedurally barred unless the defendant both makes a specific objection or proposes an alternative instruction at trial and raises the issue on appeal."), cert. denied, ___ U.S. ___, 117 S.Ct. 197, 136 L.Ed.2d 134 (1996).
During pretrial, Jones submitted two motions regarding the CCP aggravator. One was a motion to declare section 921.141(5)(i), Florida Statutes (1993), unconstitutional, on the grounds that the statutory CCP aggravator was vague, overbroad, arbitrary and capricious on its face and as applied. The other motion moved to prohibit any instruction being given on the CCP aggravator, on the grounds that the statutory CCP aggravator was impermissibly vague and overbroad on its face and as applied and that the facts did not support such aggravator. However, at trial Jones merely argued that the evidence did not support a finding that Monique Stow's murder was cold, calculated, and premeditated. Jones did not assert that the wording of the CCP instruction was unconstitutionally vague nor did he submit or request a limiting or alternate instruction. Consequently, Jones' Jackson claim is procedurally barred.
Moreover, even if Jones had properly preserved his Jackson claim, any error in instructing the jury on the CCP aggravator would have been harmless beyond a reasonable doubt because of the extent of the evidence supporting that aggravator and the strength of the other aggravators as compared to the mitigating evidence. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Jones next contends that there was insufficient evidence to support a finding that Monique Stow's murder was cold, calculated, and premeditated and that the evidence instead established that the murder occurred during a dispute which aroused Jones' passion and overcame his usual good judgment. Pursuant to Jackson, the following four elements must be proven in order for the CCP aggravator to be applicable: (1) the murder must be the product of cool, calm reflection rather than prompted by emotional frenzy, panic, or a fit of rage; (2) the murder must be the product of a careful plan or prearranged design; (3) there must be "heightened premeditation," over and above the premeditation required for unaggravated first-degree murder; and (4) there must be no pretense of moral or legal justification for the murder. Jackson, 648 So.2d at 89; Walls v. State, 641 So.2d 381, 387-88 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995).
The evidence presented at trial establishes that all four of these elements were present in this case and that the trial court properly found that the CCP aggravator applied to Monique Stow's murder. The evidence supports the State's theory that the murder was the product of cool, calm reflection rather than prompted by emotional frenzy, panic, or a fit of rage. When Jones went to San Pablo Motors on March 3, 1994, he had no money to pay for the car. Jones knew that Monique worked in the office with her father. After Jones retrieved his pistol from the car, he immediately sought her out while she was washing her hands in the bathroom and killed her so that there would be no witness to her father's murder. Jones shot her twice in the head at close range, an execution-style killing. Coldness exists beyond any reasonable doubt.
*572 The evidence also established that Monique was not killed as an afterthought or during Jones' escape after he shot Ezra Stow but as part of a careful plan or prearranged design to kill Monique and then kill her father. Ezra Stow testified at trial that he heard two gunshots right before Jones came into his office and began shooting at him. Ezra Stow's testimony, in conjunction with the ballistics and crime scene evidence, proved that Jones shot Monique first and then went into the office and shot Ezra Stow before Ezra had a chance to pull his gun out of its holster. These facts show that the murder was committed in a calculated fashion.
The evidence adduced at trial further established that Jones killed Monique Stow with heightened premeditation. Although Jones went to the car lot for the alleged purpose of paying off the worthless check, he brought no money with him, and instead brought a pistol. He went to the car lot near closing time and waited to retrieve the gun from his car until he knew that only Stow and his daughter would be in the trailer. When he returned to the trailer after retrieving his gun, he immediately went to the bathroom and shot Monique Stow twice in the head and then proceeded to Ezra Stow's office to do the same to him. The evidence supports the trial court's finding that Jones formed his plan to murder the Stows in advance of March 3 and that his murder of Monique Stow was not a spur-of-the-moment act or one involving only a short period of premeditation. Heightened premeditation exists beyond any reasonable doubt.
Additionally, there is absolutely no evidence present in the record suggesting that Jones had a legal or moral pretense of justification for murdering Monique Stow. Additionally, Jones' appellate brief does not assert the existence of a pretense of moral or legal justification for the murder. We therefore conclude that the trial court properly found that the CCP aggravator applied in this case.
Finally, Jones asserts that his death sentence is not proportional because the killing was caused by out-of-control emotions. He argues that the mitigating circumstances in his case are overwhelming. We disagree. The record below contains competent, substantial evidence to support the trial court's finding that this was a premeditated murder committed for pecuniary gain rather than a killing resulting from out-of-control emotions. As noted by the trial court:
The contrast between the defendant's background of honorable Navy service and lack of criminal record with the cold, calculated, planned, pitiless murder of daughter and attempted murder of father is startling and makes it appear that the defendant was two different personalitiessort of a Dr. Jekyll and Mr. Hyde.
If the murder and attempted murder had happened on the spur of the moment, then it would appear as a lapse in defendant's usual personality and behavior. However, these were carefully planned crimeswhich were pitiless and solely for financial gain.
It is difficult to understand how the defendant could be such an entirely different person at different timesyet the evidence shows that he was.
There was no evidence at trial, in the PSI, or elsewhere that the defendant suffered any emotional or psychiatric problems. Absent emotional problems, his behavior in planning and carrying out the murder and attempted murder was an intended, deliberate and calculated departure from his other persona.
Accordingly, we affirm the convictions and sentence of death.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.