842 So.2d 788 (2003)
Chadwick D. BANKS, Appellant,
v.
STATE of Florida, Appellee.
Chadwick D. Banks, Petitioner,
v.
James V. Crosby, Jr., Respondent.
Nos. SC01-1153, SC02-63.
Supreme Court of Florida.
March 20, 2003.
*789 Gary L. Printy of the Law Office of Gary L. Printy, Tallahassee, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General and Curtis M. French, Senior Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Chadwick D. Banks, a prisoner under a sentence of death, appeals an order of the trial court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Additionally, he files a petition for a writ of habeas corpus. We have jurisdiction. See art. V, §§ 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the decision of the trial court and deny habeas corpus relief.

FACTUAL AND PROCEDURAL BACKGROUND
Chadwick D. Banks (Banks) pled no contest to two counts of first-degree murder for the shooting deaths of his wife Cassandra Banks and his stepdaughter Melody *790 Cooper. Banks also pled no contest to sexual battery on a child under the age of twelve for acts committed against Melody Cooper. The jury recommended death by a vote of nine to three, and the trial court sentenced Banks to death. This Court affirmed the trial court's ruling upon direct appeal. The United States Supreme Court denied certiorari on March 23, 1998.[1]
On June 10, 1999, Banks filed a rule 3.850 motion alleging that he was denied effective assistance of counsel due to the trial counsel's failure to retain a mental-health expert to evaluate possible statutory and nonstatutory mitigating evidence which was available for presentation to the sentencing jury and judge. The witnesses who testified at the evidentiary hearing included: Steve Seliger (Seliger) and Armando Garcia (Garcia), trial counsel for Banks; and Dr. David Partyka and Dr. James Larson, expert witnesses retained by Banks' postconviction counsel. The trial court found no merit to Banks' claims. Banks appeals the trial court's decision and also petitions this Court for a writ of habeas corpus.

DISCUSSION

I. 3.850 APPEAL
Banks first claims that the trial court erred in failing to grant a new penalty phase after an evidentiary hearing on his claim of ineffective assistance of counsel. Banks argues that had trial counsel fully investigated and prepared for the penalty phase, they would have found a wealth of mitigation that would have affected the jury's decision. Under Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when evaluating ineffective assistance of counsel claims, this Court is required to decide two issues: (1) whether counsel's performance was deficient, and (2) whether such deficiency prejudiced the defendant. To determine whether counsel was deficient, this Court looks not only at counsel's failure to investigate and present possible mitigating evidence but also at counsel's reasons for doing so. See Rose v. State, 675 So.2d 567, 571 (Fla.1996). Moreover, the defendant has the burden to show that counsel's ineffectiveness actually "deprived the defendant of a reliable penalty phase proceeding." Rutherford v. State, 727 So.2d 216, 223 (Fla.1998).
Specifically, Banks argues that he was denied effective assistance of counsel because counsel failed to seek the assistance of a mental health expert in order to explain the potential mitigating evidence concerning beatings Banks received from his father from the age of three to the age of around eleven or twelve and Banks' abuse of alcohol. Banks contends that counsel's decision not to present this type of evidence was not a strategic decision because counsel did not seek the assistance of a mental health expert before making the decision. At the evidentiary hearing in the trial court, Banks presented the testimony of Dr. Larson who, in essence, opined that Banks' abuse of alcohol was his method of dealing with the physical abuse he suffered as a child. Dr. Larson indicated that this type of testimony could have been presented as mitigating evidence. However, on cross-examination Dr. Larson conceded that this kind of evidence could backfire and leave the jury with the impression that the defendant was a dangerous individual. The defendant also offered the testimony of Dr. Partyka, who testified that he believed alcohol played a major role in the crimes. Dr. Partyka indicated that the *791 consumption of alcohol affected Banks' judgment and inhibitions on the night of the murders to the extent that it released his anger concerning how he had been treated as a child. However, Dr. Partyka also admitted that the degree of intoxication was based on information he obtained from Banks and that he was not familiar with the testimony of the witnesses who said Banks did not exhibit any signs of intoxication on the night of the murders.
In prior cases, we have found ineffective assistance of counsel where no attempt was made to investigate mitigation even though substantial mitigating evidence could have been presented. See Rose, 675 So.2d at 572; Hildwin v. Dugger, 654 So.2d 107, 109-10 (Fla.1995) (ordering a new penalty phase where counsel's failure to adequately investigate and uncover mitigation evidence, including prior psychiatric hospitalizations, resulted in an unreliable penalty phase). However, we have also found that the trial court properly denied relief where counsel did conduct a sufficient investigation of mental health mitigation before trial, but made a strategic decision not to present such evidence. For example, in Rose v. State, 617 So.2d 291, 294 (Fla.1993), where a psychologist determined the defendant had an antisocial personality disorder, but not an organic brain disorder, we denied an ineffective assistance of counsel claim based on counsel's failure to investigate further.
Although Banks claims that Seliger failed to consult mental health experts, the record clearly shows that counsel consulted mental health experts and decided on a strategy after considering his options. When Seliger was appointed to the case, Dr. McClaren, a mental health professional, had already been assigned to the case. In preparation for trial, Seliger consulted Dr. McClaren, who interviewed Banks within twenty-four hours of the murders. Seliger opted not to call Dr. McClaren at trial because he felt that the doctor had rendered an unfavorable report. Furthermore, the evidence in the record indicates that Seliger conducted an extensive investigation in this case. Seliger acquired Banks' school records, military records, employment records, and medical records. Additionally, Seliger interviewed Banks' family members and other individuals who knew Banks.
Seliger also testified that he reviewed the records of Dr. Woodward and was aware of Banks' childhood physical abuse. Seliger reviewed Dr. McClaren's report which discussed Banks' possible childhood physical abuse. Seliger also discussed Banks' child abuse with his parents. Seliger testified that based upon his prior experience in Gadsden County, the inability to make a connection between Banks' abuse, which lasted for a finite period of time during his childhood, and the murders, and the family's good reputation in the community, he felt that the child abuse strategy would be ineffectual. Banks has failed to demonstrate deficient conduct in failing to present the child abuse evidence.
At the evidentiary hearing, counsel testified that he did not remember Banks having a documented history of alcoholism. Further, Seliger felt that introducing evidence of Banks' past criminal acts, which involved the consumption of alcohol, would be inconsistent with his theory of the case. Seliger indicated that had he attempted to establish that Banks was only violent when consuming alcohol, it is likely that he would have opened the door for the State to present evidence highlighting Banks' prior criminal history.
Banks' argument that counsel was ineffective for failing to consult a mental health expert regarding the role that alcohol played in the murders is based primarily *792 upon the expert opinions of Dr. Partyka and Dr. Larson. With regard to expert opinion testimony, this Court has stated: "Opinion testimony gains its greatest force to the degree it is supported by the facts at hand, and its weight diminishes to the degree such support is lacking." Walls v. State, 641 So.2d 381, 390-91 (Fla.1994). In the instant case, little evidence existed to support Banks' claim that he was intoxicated at the time of the murders. During the penalty phase, trial counsel introduced evidence concerning Banks' consumption of alcohol near the time of the murders. Annie Pearl and Leonard Collins testified that they had served Banks between five and seven sixteen-ounce malt liquor beers. While evidence did show that Banks had consumed a substantial amount of alcohol on the night of the murder, the evidence did not support a finding of intoxication at the time of the murders. On direct appeal, this Court stated:
While voluntary intoxication or drug use might be a mitigator, whether it actually is depends upon the particular facts of a case. [Johnson v. State, 608 So.2d 4, 13 (Fla.1992).] We conclude that the trial court did not abuse its discretion in finding that there was insufficient evidence to establish that appellant was under the influence of alcohol. Testimony revealed that in the hours preceding the murders, appellant was present at a local bar, where he was served between five and seven sixteen-ounce servings of malt liquor over a period of approximately five or six hours. Notwithstanding his alcohol consumption, appellant won several pool games throughout the evening and displayed no visible signs of drunkenness such as slurred speech or stumbling. Also, the circumstances of the crimes themselves demonstrate that they were committed in a purposeful manner. Appellant drove to Cassandra Banks' trailer, entered without turning on the lights, shot Ms. Banks execution-style while she lay sleeping, and then proceeded to Melody Cooper's bedroom.
Thus, although he had ingested a considerable quantity of alcohol before the murders, appellant's actions both before and during the murders and the length of time over which the alcohol was consumed support the trial court's finding that there was insufficient evidence to establish that appellant was under the influence of alcohol when he assaulted and killed Melody Cooper. The trial court found that even if this nonstatutory mitigator had been established, it would be afforded only minimal weight. Thus, any possible error in finding that this mitigator was not established was harmless. See also Preston v. State, 607 So.2d 404, 412 (Fla.1992) (upholding trial court's finding that defendant's drug and alcohol use did not even rise to the level of nonstatutory mitigating circumstance).
Banks, 700 So.2d at 368.
Banks has failed to demonstrate that counsel's strategy for the presentation of the penalty phase evidence was deficient. Therefore, he is not entitled to relief on this issue.
Finally, Banks argues that Seliger was ineffective for allowing Garcia to present the closing argument at the penalty phase. Banks argues that Garcia's closing argument shows that he lacked the necessary experience and expertise to handle a capital case. Although Banks failed to raise this issue in his motion for postconviction relief and the trial court did not rule on this issue, the trial court allowed Seliger to address the issue during his testimony. Seliger stated that he opted to allow Garcia to make the closing argument because he was "more emotional" than Seliger. *793 Garcia's closing argument, in accordance with Seliger's strategy, repeatedly emphasized that Banks' life was "worth saving." Garcia emphasized Banks' school background, his military service, and his job record. Garcia also pointed out the role that alcohol played in the murder. Although Garcia did not restate the jury instructions during closing argument, he did mention the factors in the case that were aggravating and those that were mitigating. The jury was given instructions which required them to weigh the case's aggravating circumstances against the mitigating circumstances.
Banks has failed to demonstrate that Garcia's closing argument was deficient. Therefore, we deny relief on this issue.

II. HABEAS PETITION
Banks argues that Florida's death penalty statute is unconstitutional because the jury was not required to make specific factual findings as to aggravation and mitigation. Banks further argues that Florida's statute is unconstitutional in light of the United States Supreme Court's decisions in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Applying these decisions to the instant case, Banks argues that it is clear that the aggravators under the Florida death penalty sentencing scheme are arguably elements of the offense which must be charged in the indictment, submitted to a jury during the guilt phase, and proven beyond a reasonable doubt.
Banks' Apprendi claim must be considered in light of the United States Supreme Court's recent decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which made Apprendi applicable to capital cases. See Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, ___ U.S. ___, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002). In Bottoson, we rejected the type of constitutional challenge Banks presents in this case. We again reject this claim. Additionally, it should be noted that the trial court found as aggravating factors that Banks had been previously convicted of a violent felony and that the murder was committed during the course of a felony. Both factors involve circumstances that were submitted to the jury and found to exist beyond a reasonable doubt. Habeas relief based on Apprendi/Ring is hereby denied.

CONCLUSION
Accordingly, we affirm the trial court's denial of postconviction relief and deny Banks' petition for writ of habeas corpus.
It is so ordered.
WELLS, PARIENTE, LEWIS and QUINCE, JJ., and SHAW and HARDING, Senior Justices, concur.
ANSTEAD, C.J., concurs in result only.
NOTES
[1] A more detailed description of the facts of this case is contained in the direct appeal opinion. See Banks v. State, 700 So.2d 363 (Fla.1997).