971 So.2d 85 (2007)
Norman GRIM, Appellant,
v.
STATE of Florida, Appellee.
Norman Grim, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC06-122, SC06-1575.
Supreme Court of Florida.
October 4, 2007.
Rehearing Denied December 17, 2007.
*89 Jeffrey M. Hazen and Harry Brody of Brody and Hazen, P.A., Tallahassee, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General and Ronald A. Lathan, Jr., Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Norman Grim, a prisoner under sentence of death, appeals an order denying his motion for postconviction relief and petitions this Court for writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the lower court's order and deny Grim's habeas petition.

I. FACTS AND PROCEDURAL HISTORY
The underlying facts are stated in our opinion affirming Grim's convictions and sentences, Grim v. State, 841 So.2d 455, 457-59 (Fla.2003), and are briefly summarized here. At about 5:08 a.m. on July 27, 1998, Deputy Sheriff Timothy Lynch responded to a call from Cynthia Campbell regarding a disturbance behind her house. When he arrived, Campbell was standing on her porch with her neighbor, the defendant, Norman Grim, Jr. After Lynch finished his investigation and before returning to his house, Grim invited Campbell over for a cup of coffee. Campbell's bookkeeper arrived at Campbell's house at 7:20 a.m., entered the house, and called for Campbell. Receiving no response, she called the police. Later that morning, Campbell's paralegal went to Campbell's house, saw her car in front of the house, and went inside. Ten to fifteen minutes later, Deputy Sheriffs Calvin Rutherford and Steven McCauley arrived. They spoke with Grim and obtained permission *90 to look inside his home, but saw no signs of struggle. Corporal Blevin Davis arrived at 11 a.m. and talked briefly with Grim. Grim asked for and obtained permission to get his dogs, which were loose in the neighborhood. He was followed for a time by Deputy Donnie Wiggen, who lost sight of him.
Thomas Rodgers, the manager of the north end of the Pensacola Bay fishing bridge, ran a bait and tackle shop and convenience store at the foot of the bridge. Rodgers testified that sometime in the early afternoon of July 27, 1998, Grim came into his store. A surveillance videotape showed Grim entering the store just after 2 p.m. Cynthia Wells, a former coworker of Grim, left work at around 1 p.m. She was traveling on the Pensacola Bay Bridge, and saw Grim on the fishing bridge walking beside his parked car with both doors and the trunk open. At about 3:30 p.m. the same afternoon, James Andrews was fishing from the Pensacola Bay Bridge and hooked Cynthia Campbell's body. The body was wrapped in layers of material, including garbage bags, a floral sheet, blue striped sheets, a piece of green carpet, masking tape, and rope. The autopsy revealed blunt force trauma to Campbell's face, shoulders and head consistent with having been inflicted by a hammer. She also suffered eleven stab wounds to the chest.
Two damp mops with suspected blood stains were found in Grim's kitchen. A piece of green carpet consistent with the carpet wrapped around the victim's body was found on Grim's back porch. Also on the porch was a cooler containing, among other things, prescription glasses matching Campbell's prescription records; a roll of masking tape that fracture-matched the tape on Campbell's body; a steak knife with six genetic markers consistent with the victim; a hammer with genetic markers consistent with the victim; and a blue and white striped pillowcase. The rope and green carpet found on the victim's body, although not fracture-matched, were identical in appearance, construction, and fiber type as those found in Grim's home. Fingerprints on a coffee cup found in Grim's kitchen were identified as the victim's. Bloody fingerprints on a trash bag box also found in his kitchen were identified as Grim's, and DNA testing yielded genetic markers consistent with the victim. Stains on a pair of shorts and shoes found in Grim's living room bore genetic markers consistent with those of the victim.
Grim was arrested in Oklahoma on July 31, 1998. An analysis of stains on the shorts he was wearing when arrested revealed twelve genetic markers consistent with the victim's DNA.
Grim was tried and found guilty of first-degree murder and sexual battery upon a person twelve years of age or older with the use of a deadly weapon. When Grim instructed his attorneys not to present mitigating evidence, the trial court conducted a hearing pursuant to Koon v. Dugger, 619 So.2d 246 (Fla.1993). The trial judge determined that Grim freely, voluntarily, and knowingly decided to waive mitigation. The jury recommended death by a vote of 12-0. The trial judge ordered a presentence investigation report and appointed special counsel to present mitigating evidence to the court at the sentencing/Spencer[1] hearing. Grim did not present *91 any mitigating evidence and objected to presentation by special counsel. Despite Grim's objection, special counsel presented available mitigating evidence. In sentencing Grim, the trial court followed "two separate paths"considering the jury recommendation and independently weighing aggravating and mitigating circumstances. It concluded that the aggravating factors significantly outweighed the mitigation and that "death is unquestionably the appropriate penalty."[2] On appeal, we affirmed the convictions and sentences. Grim, 841 So.2d at 465.[3] The United States Supreme Court denied certiorari. See Grim v. Florida, 540 U.S. 892, 124 S.Ct. 230, 157 L.Ed.2d 166 (2003).
On October 5, 2004, Grim filed the postconviction motion at issue, raising numerous claims.[4] After an evidentiary hearing, the trial court denied relief.

*92 II. ANALYSIS OF APPEAL
Grim raises the following claims: (A) the State committed two Brady violations; (B) his guilt-phase counsel was ineffective in various respects; (C) penalty-phase counsel was ineffective; and (D) special counsel had an undisclosed conflict of interest. In his accompanying petition for writ of habeas corpus Grim claims: (1) section 921.141, Florida Statutes (2006), is unconstitutional; (2) the State's failure to specify aggravators in the indictment is unconstitutional; (3) the jury instructions improperly shifted the burden of proof; and (4) appellate counsel was ineffective. We address Grim's claims on appeal in order and then address his habeas petition.

A. BRADY CLAIMS
Grim first asserts Brady violations related to (1) the revocation of the medical examiner's license to perform autopsies in Missouri; and (2) a letter regarding Grim's history of drug and alcohol abuse. We address each claim in turn.

1. Revocation of Medical Examiner's Missouri License
Dr. Michael Berkland, a medical examiner, performed the autopsy of Cynthia Campbell. At trial, Berkland testified that Campbell suffered severe blunt force trauma consistent with having been repeatedly bludgeoned with a hammer. Berkland also testified that the victim had been stabbed with a knife no fewer than eleven times and that injuries to the pelvic area indicated an object had been forcibly inserted into her vagina and removed at a sharp angle. Berkland's testimony about the insertion of an object into the victim's vagina formed the basis for the sexual battery charge of which Grim was convicted. The sexual battery charge in turn formed the basis for the felony-murder prong of Grim's first-degree murder indictment.
At the time of Grim's trial, Berkland's license to perform autopsies in Missouri had been revoked.[5] The State Attorney's Office had received a twenty-three page facsimile communication dated October 12, 1998, containing various newspaper articles, court papers, and letters documenting the revocation of Berkland's license. These documents were never turned over to the defense. On March 25, 1999, Berkland gave a sworn deposition attended by Assistant State Attorney Ronald Swanson and Assistant Public Defender Antoinette Stitt. Berkland admitted that his Missouri autopsy license had been revoked and explained the circumstances surrounding its revocation.
After the Public Defender withdrew from Grim's case due to a conflict, Richard Hill replaced Ms. Stitt as defense counsel. Hill testified that the Public Defender's Office provided him all its files and deposition records and that he reviewed Berkland's March 1999 deposition testimony. *93 However, Hill never impeached Berkland about the revocation of his Missouri license. Grim argues that the State's failure to disclose the faxed documents constitutes a Brady violation. He also argues that Hill's failure to impeach Berkland at trial constitutes ineffective assistance of counsel. The merits of these claims are analyzed below.

a. The Brady Claim
As we recently explained,

Brady requires the State to disclose material information within its possession or control that is favorable to the defense. To establish a Brady violation, the defendant has the burden to show (1) that favorable evidenceeither exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced.
To establish prejudice or materiality under Brady, a defendant must demonstrate "a reasonable probability that the jury verdict would have been different had the suppressed information been used at trial. In other words, the question is whether `the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"
Riechmann v. State, 966 So.2d 298, ___ (Fla. 2007) (citations omitted) (quoting Ponticelli v. State, 941 So.2d 1073, 1084-85 (Fla.2006)).
The documents the State failed to disclose call into question Berkland's qualifications as a medical examiner. They include a permanent injunction issued in Jackson County, Missouri, which states that Berkland "poses a substantial probability of serious danger to the health, safety, and welfare of his patients, clients, and/or the residents of Missouri." A newspaper article, "Skill of Medical Examiner Debated," describes the disciplinary charges against Berkland; and a letter from the Missouri Board of the Healing Arts states that "we have discovered evidence that one of the former medical examiners from Jackson County, Missouri, a physician currently licensed in the State of Missouri, fabricated autopsy findings while performing his duties." These and other similar documents undoubtedly represent favorable impeachment evidence that could have been utilized by the defense. Therefore, they satisfy the first Brady prong. In addition, the State concedes that it failed to disclose these materials. Therefore, Grim's claim satisfies the second Brady prong.
However, because Grim failed to present any evidence challenging the validity of Berkland's autopsy in this case, Grim fails to establish prejudice. Although defense counsel may have been able to attack Berkland's qualifications based on the information contained in the faxed documents, there is no indication that the substance of Berkland's testimony was erroneous. At the evidentiary hearing, Grim failed to present any evidence that Berkland's testimony or autopsy were defective. Grim did not produce any expert testimony contradicting Berkland's conclusion that the victim had been repeatedly attacked with a hammer, stabbed multiple times, and had an object forcefully inserted into her vagina. Therefore, the State's failure to disclose the faxed documents does not undermine confidence in the jury's guilty verdict, and the trial court properly denied Grim's Brady claim.

b. Ineffective Assistance of Counsel Claim
Grim also argues that Hill's failure to impeach Berkland based on the March 1999 deposition constitutes ineffective assistance of counsel. To prove ineffective *94 assistance, a defendant must establish both deficient performance and prejudice. See, e.g., Jones v. State, 928 So.2d 1178, 1183 (Fla.2006). "To establish deficient performance, a petitioner must demonstrate that counsel's representation `fell below an objective standard of reasonableness.'" Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To prove prejudice, a defendant must establish "`that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' A reasonable probability is a `probability sufficient to undermine confidence in the outcome.'" Smith, 931 So.2d at 800 (citation omitted) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). On appeal, we defer to factual findings that are supported by competent, substantial evidence, but review legal conclusions de novo. Henry v. State, 937 So.2d 563, 569 (Fla.2006).
Berkland's deposition testimony contains valuable impeachment evidence. Berkland was an important witness for the State, and it would have been reasonable to impeach him with evidence of the revocation of his Missouri license. Therefore, we agree that counsel's failure to cross-examine Berkland with this evidence constitutes deficient performance. However, Grim failed to establish prejudice. As explained in our Brady analysis above, Grim failed to present any evidence that Berkland's autopsy or trial testimony was erroneous. Therefore, Grim fails to demonstrate a reasonable probability that but for counsel's deficient performance the outcome of his trial would have been different. Counsel's failure to impeach does not undermine confidence in the outcome of Grim's trial. Therefore, the trial court properly denied this claim.

2. Donald Ramsey Letter
Grim's second Brady claim concerns the State's failure to disclose a letter written by Donald Ramsey, a friend of Grim, describing Grim's history of drug and alcohol abuse. The letter also stated that Grim physically abused his wife and was prone to violent mood swings. The State does not dispute that this letter was never revealed to the defense. However, because the failure to disclose Ramsey's letter does not undermine our confidence in the verdict, we affirm the trial court's denial of this claim.
As the trial court noted, information concerning Grim's drug and alcohol abuse was readily available to the defense. His counsel testified below that he had access to extensive medical records indicating that Grim had been treated for drug and alcohol abuse. Compared to these records, Ramsey's letter, drafted by a layman with no medical or psychiatric training, is of marginal value. Furthermore, trial counsel testified that at trial Grim emphatically refused to present a voluntary intoxication or insanity defense; nor did Grim want to present such evidence as mitigation during the penalty phase. Therefore, even if Ramsey's letter had been made available to the defense, it would have been useless at trial due to Grim's specific desire not to present evidence of intoxication or insanity. For these reasons, the trial court properly denied Grim's claim.

B. INEFFECTIVE ASSISTANCE OF GUILT-PHASE COUNSEL
Grim asserts four claims of ineffective assistance of guilt-phase trial counsel: (1) failing to present a viable mental health defense; (2) failing to move for disqualification of the trial judge; (3) informing the *95 court of Grim's instructions not to argue for lesser included offenses; and (4) failing to challenge the State's evidence or present reasonable doubt evidence. For the reasons explained below, we affirm the denial of relief as to each of these claims.

1. Mental Health Defense
Grim argues that trial counsel rendered ineffective assistance by failing to investigate and present (through the use of a neuropharmacological expert) a "multi-faceted defense" based on Grim's "intoxication, use of prescribed and illicit drugs, brain damage, and intermittent explosive disorder." The trial court rejected this claim, concluding counsel was limited by Grim's lack of cooperation. The trial court also found that "defense counsel conducted a sufficient investigation and made a reasonable professional decision not to secure the services of a neuropharmalogical expert based on the facts of this case." We agree.
Grim was represented at trial by Richard Hill and Michael Rollo. Hill was primarily responsible for the guilt phase and Rollo for the penalty phase. Rollo contacted Dr. James Larson, a psychologist, who had several meetings with counsel and interviewed and performed psychological testing on Grim. Larson testified at the evidentiary hearing that Grim previously had been diagnosed with intermittent explosive disorder and antisocial personality disorder and had been treated with Depakote and Prozac. He further testified that Grim abused alcohol. Testing showed "red flags" indicating possible brain damage or an organic brain problem. Larson repeatedly testified that he discussed various defenses with counsel and Grim, but Grim was adamant that he was interested only in exoneration and did not want such information used. Hill testified that the defense at trial was basically one of reasonable doubt. He further testified that he discussed other defenses with Grim, including a possible intoxication defense, but Grim adamantly refusedhe wanted a not guilty verdict or the death penalty. Although Hill had numerous conversations with Grim and advised him that the chances of success were small, Grim did not change his mind.
After rejecting all lowered culpability defenses at trial, Grim now claims counsel was ineffective for failing to investigate and present a defense based on a combination of his voluntary intoxication, drug use, brain damage, and intermittent explosive disorder. We conclude the decision not to employ another expert was reasonable. Trial counsel was aware of Grim's possible brain damage, explosive disorder, use of prescribed drugs, and history of substance abuse. Trial counsel discussed with Grim a possible intoxication defense, but Grim repeatedly refused any defense that would require an admission of guilt or would result in anything other than exoneration. We rejected a similar claim in Henry:
[T]he record is clear that Henry was adamant that trial counsel not rely on any evidence of intoxication or addiction in Henry's defense, in either the guilt or penalty phases. "When a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made."
937 So.2d at 571 (quoting Rose v. State, 617 So.2d 291, 294 (Fla.1993)). This is not a situation where trial counsel was unaware of the facts underlying a possible defense or completely failed to discuss a possible defense with the defendant. Hill and Larson both discussed possible intoxication-type defenses with Grim. The decision not to hire another expert was based on Grim's refusal to consider a defense that would require an admission of guilt. See Henry, 937 So.2d at 573 ("`[T]he reasonableness *96 of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.'") (quoting Stewart v. State, 801 So.2d 59, 67 (Fla.2001)). Therefore, Grim's claim fails the first Strickland prong.
Further, there is no prejudice. Grim would not even allow counsel to utilize Larson at trial. Had trial counsel consulted another expert, there is no evidence that Grim would have changed his mind and permitted trial counsel to use that expert. Trial court findings that Grim's lack of cooperation limited trial counsel and that trial counsel conducted a reasonable investigation are supported by competent, substantial evidence.

2. Disqualification of the Trial Judge
Grim next argues that counsel was ineffective for failing to seek the judge's disqualification. His argument concerns defense counsel's attempted introduction of the victim's hearsay statements. The victim was an attorney in litigation adverse to Henry Company Homes, and representatives of that company allegedly threatened her. Defense counsel sought to introduce the victim's statement, among others, that "If I ever end up dead in the bay, point your finger at Henry Homes." Grim, 841 So.2d at 462-63. The trial court found the statements inadmissible, and we affirmed on direct appeal. Id. at 464. At a pretrial hearing, the trial judge informed the parties that before becoming a judge in 1991, he was a real estate attorney and did real estate closings for Henry Homes. Grim claims counsel was ineffective for failing to seek disqualification. The trial court properly rejected this claim.
"A motion to disqualify will be dismissed as legally insufficient if it fails to establish a well-grounded fear on the part of the movant that he will not receive a fair hearing." Griffin v. State, 866 So.2d 1, 11 (Fla.2003). The record refutes any notion that Grim feared an unfair hearing.[6] The trial judge explained the potential conflict and gave Grim the opportunity to object, but he did not. Hill testified at the evidentiary hearing that he spoke with Grim regarding the trial judge's disclosure and Grim did not have a problem with the judge staying on the case. Trial counsel is not ineffective for failing to file a legally insufficient motion to disqualify. See, e.g., Waterhouse v. State, 792 So.2d 1176, 1194-95 (Fla.2001) (rejecting ineffective assistance claim for failure to seek recusal where the merits of the motion would not have warranted the judge's recusal); Griffin, 866 So.2d at 11 (finding the Strickland prejudice prong could not be met where, even if counsel had moved for recusal, he would not have prevailed).
Grim claims that the exclusion of the victim's hearsay statements demonstrates prejudice. However, on direct appeal we affirmed the inadmissibility of these statements. Grim, 841 So.2d at 464. Appellant has not pointed to anything that shows the trial judge was biased or that otherwise undermines confidence in the outcome of the proceeding. For these reasons, *97 Grim has failed to satisfy either Strickland prong, and we affirm the trial court's denial of this claim.

3. Lesser Included Offenses
Grim claims trial counsel rendered ineffective assistance when he informed the trial court that Grim did not want to argue for lesser included offenses. The trial court concluded that Grim failed to establish either Strickland prong because he instructed trial counsel not to argue lesser included offenses. We agree.
Before beginning jury selection, trial counsel gave the trial judge a document indicating that Grim wished to waive the presentation of penalty-phase mitigation. The trial court then conducted a Koon inquiry. After inquiring of Grim and Rollo, the trial judge asked Hill if he concurred. Hill responded that it had always been Grim's position that he did not wish to present mitigation and, if found guilty, Grim wanted the death penalty. In this context, Hill also informed the trial court that Grim did not want counsel to argue lesser included charges. Grim himself confirmed that he did not want counsel to argue for second-degree murder because he preferred a death sentence to a lengthy prison term.
Before closing argument, Hill reiterated Grim's wishes. The trial court questioned Grim extensively, again confirming that he did not want to argue lesser included offenses; that he understood what the lesser included offenses were; that he understood the jury would be given instructions on lesser included offenses because the State requested them, see State v. Johnson, 601 So.2d 219, 220 (Fla.1992); that he made the decision himself against the advice of counsel; that he understood that if found guilty it would be life or death; and that he understood that it was not simply his decision as to whether death was the appropriate penalty. Hill testified at the evidentiary hearing that Grim "did not want me to argue for anything other than not guilty, no lesser includeds," and Hill advised the trial court of Grim's wishes to be sure it was on the record.
We agree with the trial court that Grim has failed to establish deficient performance or prejudice. The record is clear that Grim instructed counsel not to argue for lesser included offenses. Grim was present when counsel informed the trial court as much and actually confirmed his wishes. In this context, counsel's statements informing the trial court of Grim's instructions were reasonable and certainly do not rise to a level "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Further, the statements were made outside of the presence of the jurythe guilt-phase decisionmaker. The jury was instructed on, and the verdict form included, lesser included offenses. Therefore, even if we were to find that counsel should have refrained from providing this information to the trial court, it does not undermine our confidence in the outcome of the proceeding. We affirm the trial court's denial of this claim.

4. Reasonable Doubt Evidence
In his final claim regarding guilt-phase counsel, Grim claims that counsel failed to challenge the State's evidence and to present reasonable doubt evidence. Specifically, he argues trial counsel: (a) failed to challenge Cynthia Wells's identification; (b) failed to point out that the bait shop surveillance tape shows Grim entering and exiting on foot; (c) failed to argue that Campbell was not wearing socks when she went to Grim's home, but her body was found with socks; and (d) failed to point out that there were two sets of tire tracks going into Grim's backyard. We address these claims in turn.

*98 a. Wells's Identification
Grim claims counsel was ineffective for failing to suggest that Cynthia Wells misidentified him, specifically, by failing to point out that Wells indicated he was wearing a shirt, while officers who had contact with Grim that morning indicated he was shirtless. The trial court properly rejected this claim.
Wells did testify that Grim was wearing a light-colored shirt when she saw him on the fishing bridge. Officers who responded to the victim's home the morning of the murder indicated that Grim was not wearing a shirt. Rodgers also testified Grim was not wearing a shirt when he entered the bait shop. However, contrary to Grim's suggestion, trial counsel did cross-examine Wells as to her ability to identify Grim, asking her, among other things, to describe the shirt Grim was wearing. Further, he questioned Wells's identification of Grim in closing argument, specifically pointing out that the surveillance tape from the bait shop showed Grim without a shirt, while Wells testified he was wearing one. An argument about whether Grim was wearing a shirt when he encountered officers earlier in the day would add little. See Brown v. State, 846 So.2d 1114, 1121 (Fla.2003) (finding arguments that counsel should have cross-examined or more strenuously examined on certain issues to be "essentially a hindsight analysis"). Therefore, Grim's claim fails the first Strickland prong by failing to identify an error or omission, much less a serious error omission, committed by counsel.

b. Surveillance Tape
Grim next claims trial counsel rendered ineffective assistance by failing to point out that the bait shop surveillance tape shows Grim entering and exiting the store on foot and that it does not show his car in the parking lot or entering or exiting the bridge. He suggests this undermines Wells's identification and the theory that Grim drove his car onto the bridge with Campbell's body in the trunk and disposed of the body in the bay. The trial court concluded that Grim failed to establish prejudice because, as Hill testified, several witnesses placed Grim on the pier and the surveillance tape clearly showed him in the bait shop.[7] We agree that Grim cannot establish prejudice. The surveillance tape placed Grim in the bait shop shortly after 2 p.m. on the afternoon of the murder. Rodgers likewise placed Grim in the bait shop, and Wells placed Grim and his car on the fishing bridge early that same afternoon. A fisherman hooked the victim's body in the bay at around 3:30 p.m. Blood with female DNA was found in the trunk of Grim's car. Given this evidence, and the large amount of evidence otherwise linking Grim to the victim, Grim has not identified anything related to the surveillance tape that undermines our confidence in the outcome of the proceeding.

c. Victim's Socks
Grim claims counsel was ineffective for failing to point out that Deputy Lynch, the officer who responded to the victim's home early in the morning regarding her call of a disturbance, indicated Campbell was not wearing socks, but her body was found with socks. The record does not support this claim. Lynch testified at trial that the victim was not wearing shoes when he responded to her home on the morning of the murder, but there was no mention of socks. Nonetheless, whether Campbell was absent socks when Lynch left the scene, but wearing socks when her body was found is immaterial. We fail to see *99 the relevance of the presence or absence of socks. Further, when Lynch left Campbell's home, Campbell was still on her porch. Even assuming there was some indication the victim was not then wearing socks, it does not mean she remained barefoot when she left to have coffee with Grim. Given this, all of the evidence connecting the victim to Grim's home, and the lack of evidence of a struggle in the victim's home, Grim has not established that counsel acted unreasonably or identified anything that undermines confidence in the outcome of the proceeding. For these reasons, we reject this claim.

d. Tire Tracks
Grim claims trial counsel was ineffective for failing to point out that Deputy McCauley's report indicated that there were two sets of tire tracks in Grim's backyard. Grim claims this information would place doubt on his guilt and lend credence to the defense theory that the crime scene was unsecured. At the evidentiary hearing, Hill testified that he vaguely remembered that there were two sets of tracks, but given the other evidence in the case, he did not think it was significant. The trial court rejected this claim, concluding trial counsel made a sound strategic decision. We agree.
Pointing out that there were two sets of tire tracks in Grim's backyard would not lend credence to the theory that the crime scene was left unsecured. The unsecured crime scene theory was that there was a period between the time all of the officers initially left the scene and the time officers arrived to secure the scene after the body was discovered. McCauley observed the two sets of tracks upon the initial investigation of Grim's vehicle by Deputy Rutherfordbefore Grim left the scene in his vehicle, before the officers left the scene, and before the victim's body was recovered. Therefore, the report of two sets of tracks adds nothing to the unsecure crime scene theory, and trial counsel made a reasonable strategic decision not to raise the issue at trial. See Brown, 846 So.2d at 1125 ("[T]his Court will not second-guess counsel's strategic decisions on collateral attack.").

C. INEFFECTIVE ASSISTANCE OF PENALTY-PHASE COUNSEL
Grim claims penalty-phase counsel was ineffective for (1) failing to fully investigate and present mitigating evidence; and (2) failing to advise Grim of his right to waive a jury recommendation. For the reasons explained below, we affirm the trial court's denial of these claims.

1. Investigation and Presentation of Mitigation
Grim argues that penalty-phase counsel generally failed to fully investigate mitigation and, more specifically, failed to fully investigate the effect of Grim's drug use on his behavior. He claims these errors rendered his waiver of mitigation invalid. The trial court rejected this claim, reiterating its previous conclusion that trial counsel's decision not to hire another expert was a reasonable professional decision and concluding that "[t]he Defendant has not established that defense counsel's investigation in light of the circumstances of this case was deficient nor was evidence presented that the Defendant did not make a knowing, intelligent, and voluntary waiver to present mitigation during the penalty phase." We affirm.
"`When evaluating claims that counsel was ineffective for failing to investigate or present mitigating evidence, this Court has phrased the defendant's burden as showing that counsel's ineffectiveness `deprived the defendant of a reliable penalty phase proceeding.'"' Henry, 937 So.2d at 569 (quoting Asay v. State, 769 So.2d *100 974, 985 (Fla.2000) (quoting Rutherford v. State, 727 So.2d 216, 223 (Fla.1998))). "However, along with examining what evidence was not investigated and presented, we also look at counsel's reasons for not doing so." Sliney v. State, 944 So.2d 270, 281-82 (Fla.2006). Defendants have the right to waive presentation of mitigating evidence. E.g., Koon, 619 So.2d at 249 ("We have repeatedly recognized the right of a competent defendant to waive presentation of mitigating evidence."). However, as we recognized in Koon, 619 So.2d at 250:
When a defendant, against his counsel's advice, refuses to permit the presentation of mitigating evidence in the penalty phase, counsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what the evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence.
Here, upon receiving Grim's notice of waiver of mitigation, the trial court conducted a Koon inquiry. Following the verdict, the court conducted another inquiry, incorporating the previous proceeding. Rollo proffered the following mitigation evidence: testimony and a report from Larson that two statutory mental mitigators applied; testimony from Larson as to nonstatutory mitigation, including various aspects of Grim's childhood; testimony from two of Grim's supervisors as to his good employment history; testimony from Grim's mother, sister, and stepfather as to his "chaotic childhood," that he was a good student, and that he was loving and caring; and testimony as to stress in Grim's life at the time related to his marriage. Grim confirmed that he understood the process and had discussed aggravators and mitigators with counsel, that they had thoroughly discussed his case with him, that he was satisfied with their services, and that the decision to waive mitigation was his alone against the advice of counsel. He further indicated that "Mr. Rollo has performed above and beyond his duties" and "I'm perfectly happy with his performance." The trial court found that Grim knowingly and voluntarily waived his right to present mitigation and that defense counsel complied with the duties to investigate and have witnesses ready to testify.
We have recognized that a defendant's waiver of his right to present mitigation does not relieve trial counsel of the duty to investigate and ensure that the defendant's decision is fully informed. See, e.g., State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002) ("Although a defendant may waive mitigation, he cannot do so blindly; counsel must first investigate all avenues and advise the defendant so that the defendant reasonably understands what is being waived and its ramifications and hence is able to make an informed, intelligent decision."). However, unlike other cases where we have concluded that counsel's failure to adequately investigate mitigation rendered the defendant's waiver invalid, e.g., Lewis, 838 So.2d at 1113-14, the record here does not support a claim of failure to investigate. Rollo testified that, despite his client's wishes, he recognized he still had a duty to develop mitigation. He did not latch onto Grim's desire not to present mitigation, but instead, repeatedly tried to dissuade him. Rollo's proffer reveals he uncovered a substantial amount of mitigation. Further, he filed a motion to appoint Dr. Larson as a mental health expert several months before trial and contacted *101 Grim's mother, sister, stepfather, and two supervisors.
In addition, Grim has not pointed to substantial undiscovered mitigating evidence. See Lewis, 838 So.2d at 1114. He points only to the alleged failure to fully investigate the effect of his drug and alcohol use on his explosive disorder. However, Rollo testified he was aware of Grim's drug use and explosive disorder, but did not specifically seek an expert as to the effect of drug use on Grim's mental state based on Grim's desire not to present any mitigation evidence. See Henry, 937 So.2d at 571 (rejecting an ineffective assistance claim related to the failure to pursue and present evidence of drug addiction where "trial counsel met with stiff resistance from his client at every turn regarding any efforts to piece together a drug defense for either the guilt phase or for mitigation"); Brown v. State, 894 So.2d 137, 146 (Fla. 2004) ("An attorney will not be deemed ineffective for honoring his client's wishes."). Further, Rollo proffered that Larson would establish two statutory mental mitigators, but Grim objected to presentation from Larson in any form. Grim would not even allow Rollo to proffer specifics as to Larson's findings on these mitigators, asserting attorney-client privilege. There is no indication that additional information from another expert would have altered Grim's decision not to present mitigation where, with full knowledge that such information could establish statutory mental mitigation, he refused to permit presentation in this regard from Larson.
For all of these reasons, the trial court correctly concluded that trial counsel conducted a reasonable investigation in light of Grim's decision to waive mitigation, and trial counsel's actions did not deny Grim a reliable penalty phase. See Henry, 937 So.2d at 573; Reed v. State, 875 So.2d 415, 436-37 (Fla.2004); Waterhouse, 792 So.2d at 1183-84; Koon, 619 So.2d at 250.

2. Waiver of Jury Recommendation
Finally, Grim claims ineffective assistance of penalty-phase counsel for failure to advise him of his right to waive the penalty-phase jury. We affirm the trial court's rejection of this claim.
A defendant may waive the advisory jury in the penalty phase of a capital case, provided the waiver is voluntary and intelligent. E.g., Valle v. Moore, 837 So.2d 905, 908 (Fla.2002). However, "even when a capital defendant makes a voluntary and intelligent waiver of the advisory jury's recommendation, the trial judge `may in his or her discretion either require an advisory jury recommendation, or may proceed to sentence the defendant without such an advisory jury recommendation.'" Muhammad v. State, 782 So.2d 343, 361 (Fla.2001) (quoting State v. Carr, 336 So.2d 358, 359 (Fla.1976)). The record confirms that Rollo was uncertain as to whether the jury recommendation could be waived. Nonetheless, it is unnecessary to address Strickland's performance prong because this claim fails the prejudice prong. See Jones, 928 So.2d at 1189.
First, the trial judge expressly and unequivocally informed Grim of his right to waive the jury advisory sentencing. Second, Grim himself indicated on the record that he did not care whether the court obtained a jury recommendation, and the sentencing order confirms as much: "The Defendant made it clear he would waive presentation before a jury as provided in section 921.141(1). He left the decision of whether to obtain an advisory sentence to the Court, but was adamant that no mitigation be presented or argued." Third, the sentencing order states that "had the Defendant sought to waive the jury recommendation, this Court probably would have exercised its discretion and rejected the *102 waiver." Finally, the trial judge recognized that the jury did not have the benefit of mitigating evidence and independently weighed the aggravating and mitigating circumstances. See Grim, 841 So.2d at 461 & n. 4. For these reasons, even if counsel failed to inform Grim of his right to waive the jury recommendation, our confidence in the outcome of the proceeding is not undermined.

D. SPECIAL COUNSEL
Because during the penalty phase Grim refused to present any mitigation evidence, the trial court ordered the preparation of a presentence investigation and appointed Spyro Kypreos as special counsel to investigate and present available mitigation evidence at the Spencer hearing. Grim alleges that special counsel was ineffective because of an undisclosed conflict of interest related to Kypreos's representation of Tracy Coffey, an inmate at the same correctional facility where Grim was held awaiting trial. Coffey had been interviewed as a possible witness against Grim after informing the state attorney's office that while in custody Grim had confessed to Campbell's murder. Coffey did not testify at Grim's trial, and the relationship between Coffey and Kypreos was never disclosed to the defense or the trial court. Nevertheless, Grim argues that Kypreos had a conflict of interest that resulted in Kypreos providing inadequate representation. As explained below, this claim is meritless.
When a defendant waives the presentation of mitigating evidence during the penalty phase, the trial court may appoint special counsel to present it. Muhammad, 782 So.2d at 364. As we explained, "[a]ny counsel performing this function . . . [acts] solely as an officer of the court." Id. n. 15. Special counsel appointed in this capacity is assigned to represent the public interest and not the defendant. See Klokoc v. State, 589 So.2d 219, 220 (Fla.1991). Because the appointment of special counsel is solely at the discretion of the trial court, and because special counsel solely represents the public interest, no attorney-client relationship is established between special counsel and the defendant. Therefore, a defendant has no basis for claiming that special counsel's presentation of mitigation evidence was ineffective. Muhammad, 782 So.2d at 364 n. 15 (recognizing that a defendant who "knowingly and intelligent[ly] waived the presentation of mitigating evidence . . . [is] barred from subsequently claiming that [special] counsel's performance was ineffective in the presentation of mitigating evidence"). Kypreos did not represent Grim. Therefore, Grim cannot challenge the effectiveness of Kypreos's presentation of mitigation evidence, and the trial court properly denied Grim's claim.

III. HABEAS PETITION
In his habeas petition, Grim raises two issues with several sub-issues. In his first issue he raises three claims: (1) the constitutionality of Florida's death penalty sentencing scheme under Ring, 536 U.S. 584, 122 S.Ct. 2428; (2) a violation of the Sixth Amendment and article I, section 15 of the Florida Constitution for failure to specify aggravating circumstances in the indictment; and (3) the jury instructions improperly shifted the burden of proof. In his second issue, Grim raises two ineffective assistance of appellate counsel claims. We deny these claims for the reasons explained below.

A. CONSTITUTIONAL CLAIMS

1. The Ring Claim
Grim claims Florida's death sentencing scheme is unconstitutional under *103 Ring. Grim raised a similar claim on direct appeal, which we rejected:
On rehearing, Grim has asserted that Florida's capital sentencing scheme violates the United States Constitution under the holding of Ring v. Arizona, 536 U.S. 584[, 122 S.Ct. 2428, 153 L.Ed.2d 556] (2002). This Court addressed a similar contention in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070[, 123 S.Ct. 662, 154 L.Ed.2d 564] (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067[, 123 S.Ct. 657, 154 L.Ed.2d 556] (2002), and denied relief. We likewise find that Grim is not entitled to relief on this claim. The aggravating circumstances which were present in this case included multiple convictions for prior violent felonies and a contemporaneous felony of a sexual battery, both of which were found unanimously by a jury. Moreover, by a twelve-to-zero vote, the jury recommended that the defendant be sentenced to death.
Grim, 841 So.2d at 465. "[C]laims raised in a habeas petition which petitioner has raised in prior proceedings and which have been previously decided on the merits in those proceedings are procedurally barred in the habeas petition." Porter v. Crosby, 840 So.2d 981, 984 (Fla.2003). Because we rejected a similar Ring claim on direct appeal, Grim's present Ring claim is procedurally barred.

2. Failure to Specify Aggravating Circumstances in the Indictment
Grim argues that the State violated his constitutional rights under the Sixth Amendment of the United States Constitution and article I, section 15 of the Florida Constitution by failing to specify in the indictment which aggravating circumstances it would rely on in seeking the death penalty. We rejected a similar argument in Winkles v. State, 894 So.2d 842 (Fla.2005):
As we have said before, "[t]he aggravating factors to be considered in determining the propriety of a death sentence are limited to those set out in [the statute]. Therefore, there is no reason to require the State to notify defendants of the aggravating factors that it intends to prove."
Id. at 846 (quoting Vining v. State, 637 So.2d 921, 927 (Fla.1994)). Grim's claim is likewise without merit.

3. Improper Burden Shifting
Grim next argues that the jury instructions improperly shifted the burden to the defendant to prove that the mitigating circumstances outweighed the aggravating circumstances. This argument is procedurally barred and meritless. "Claims challenging the constitutionality of Florida's capital sentencing procedures should be raised at trial and on direct appeal." Miller v. State, 926 So.2d 1243, 1256 (Fla. 2006). Furthermore, "this Court has repeatedly rejected claims that the standard jury instruction impermissibly shifts the burden to the defense to prove that death is not the appropriate sentence." Id. at 1257. Accordingly, we deny this claim.
B. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
In his habeas petition, Grim raises two ineffective assistance of appellate counsel claims: (1) counsel failed to appeal the denial of a motion to suppress evidence seized at his residence; and (2) counsel failed to argue that penalty-phase testimony by Pensacola police officer Nancy Newland (regarding the details of Grim's prior felony convictions) dominated the penalty phase and was excessively detailed. For the reasons explained below, we reject these claims.

*104 1. Failure to Appeal the Denial of the Motion to Suppress Evidence Seized at Grim's Residence
We summarized the test for reviewing ineffective assistance of appellate counsel claims in Nixon v. State, 932 So.2d 1009 (Fla.2006):
Claims of ineffective assistance of appellate counsel are properly raised in a habeas petition before the court that heard the defendant's direct appeal. The standard to be applied to these claims parallels the standard applied to claims involving the effectiveness of trial counsel as set forth in Strickland v. Washington, 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). Thus, a defendant must demonstrate that appellate counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. Prejudice is demonstrated by showing that the appellate process was compromised to the degree that confidence in the correctness of the appellate result is undermined. Moreover, the appellate court must presume that counsel's performance falls within that wide range of reasonable professional assistance.
Id. at 1023 (citations omitted). When considering whether appellate counsel was ineffective for failing to appeal a trial court's evidentiary ruling, this Court reviews the prejudice prong first:
With regard to evidentiary objections which trial counsel made during the trial and which appellate counsel did not raise on direct appeal, this Court evaluates the prejudice or second prong of the Strickland test first. . . . If we conclude that the trial court's ruling was not erroneous, then it naturally follows that habeas petitioner was not prejudiced on account of appellate counsel's failure to raise that issue.
Peterka v. State, 890 So.2d 219, 242 (Fla. 2004) (quoting Jones v. Moore, 794 So.2d 579, 583-84 (Fla.2001)). Therefore, if we determine that the trial court's denial of Grim's motion to suppress was not erroneous, then Grim's ineffective assistance of appellate counsel claim fails. Both a magistrate's probable cause determination and a trial court's ruling on a motion to suppress are accorded a presumption of correctness. State v. Panzino, 583 So.2d 1059, 1062 (Fla. 5th DCA 1991).
In his motion to suppress, Grim argued that officers omitted two facts from the search warrant affidavit that would have made a finding of probable cause impossible: (1) that two officers looked through Grim's house briefly and noticed some "old stains" but found no clear indications of blood, and (2) that Grim was not under arrest when he left his house and eluded the officer following him. As the Fifth District explained in Panzino,
When a fact is omitted from an affidavit filed in support of an application for a search warrant the reviewing court must determine whether the omission constitutes a material omission. A fact constitutes a material omission if a substantial possibility exists that knowledge of the omission would have altered a reasonable magistrate's probable cause determination. In determining whether a material omitted fact should invalidate the search warrant, the reviewing court must view the affidavit as if it had included the omitted fact and then determine whether the affidavit provides sufficient probable cause.
Id. at 1062. A review of the affidavit in this case supports the trial court's ruling.
The order denying Grim's motion to suppress states: "Having reviewed the Affidavit as if it included the omitted facts, this court finds that the Affidavit still provides sufficient probable cause for the issuance *105 of a warrant to search the Defendant's residence. There is no substantial probability that had the magistrate been apprised of these omissions . . . that he would not have found probable cause." This analysis comports with the requirements stated in Panzino, and is supported by the totality of the facts alleged in the search warrant affidavit. Even if the omitted facts were included, there was still evidence that Grim was the last person seen with the victim; that he did not report to work that morning; that he appeared to have dried blood on his shoulder, elbow and shorts; and that a piece of green carpet matching that in which the victim was wrapped was seen at Grim's home. These included facts support the trial court's conclusion that the omitted facts would not have led the magistrate to alter his probable cause determination.
Grim's motion to suppress also stated that his home was left unguarded for several hours between the time officers left the scene and when they returned with a search warrant. The motion argues that "this left the scene open to tampering, tainting, or planting of evidence." As the trial court noted, Grim offers no evidence that any of this activity occurred. Thus the trial court properly denied this claim.
We hold that the trial court's denial of Grim's motion to suppress was not erroneous. Therefore, Grim could not have been prejudiced by appellate counsel's failure to appeal the trial court's denial. Accordingly, we reject Grim's ineffective assistance of appellate counsel claim.

2. Failure to Appeal Officer Newland's Penalty-Phase Testimony
At the penalty phase, Officer Newland testified about the details of several of Grim's prior violent felony convictions. Grim asserts that this testimony impermissibly dominated the penalty phase and that appellate counsel should have raised this claim on appeal.
Grim's claim is refuted by the record. Newland was one of three witnesses who testified during the penalty phase. Her testimony comprises only eleven pages of the record and only six of those pages concern the details of Grim's prior felonies. While it is true that defense counsel objected to Newland's description of Grim's prior violent felonies, the trial court did not overrule the objection. Rather, defense counsel and the assistant state attorney approached the bench, discussed the issue, and arrived at a mutually satisfactory compromise.
As Grim acknowledges in his petition, the facts of prior violent felony convictions may be introduced during the penalty phase. See Carpenter v. State, 785 So.2d 1182, 1208 (Fla.2001) ("As a general rule, `[d]etails of prior felony convictions involving the use or threat of violence to the victim are admissible in the penalty phase of a capital trial.'" (quoting Waterhouse v. State, 596 So.2d 1008, 1016 (Fla. 1992))). "The purpose for this rule is to engage in a character analysis to determine whether the death penalty is appropriate." Carpenter, 785 So.2d at 1208. While it is also true that these descriptions may not become the "feature" of the penalty phase, see id., the record reflects that this did not occur in Grim's case. Grim fails to establish that appellate counsel's failure to raise this claim on appeal was either deficient or prejudicial, and we deny this claim.
For the foregoing reasons we affirm the trial court's denial of Grim's postconviction motion and deny his petition for writ of habeas corpus.
It is so ordered.
*106 LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and CANTERO, JJ., concur.
BELL, J., recused.
NOTES
[1] Spencer v. State, 615 So.2d 688, 691 (Fla. 1993) (holding that the trial court should conduct a hearing to allow the parties to be heard, afford the parties an opportunity to present additional evidence, allow the parties to comment on or rebut information in any presentence or medical report, and afford the defendant an opportunity to be heard in person).
[2] The trial court found three aggravating circumstances: (1) commission by a person previously convicted of a felony and under sentence of imprisonment or placed on community control or on felony probation; (2) commission by a person previously convicted of a capital felony or of a felony involving the use or threat of violence to the person; and (3) commission while engaged in the commission of or attempt to commit a sexual battery. The trial court found three statutory mitigators (pursuant to section 921.141(6)(h), Florida Statutes (1997)):(1) disruptive home life and abuse (significant weight); (2) employment background (significant weight); and (3) mental problems that did not reach the level of section 921.141(6)(b) and (f) (great weight). The trial court considered seventeen nonstatutory mitigators, concluded that many were subsumed within the statutory mitigation, but specifically addressed the following: (1) lack of long-term psychiatric care (not established); (2) marital problems and situational stress (great weight); (3) errors in judgment under stress (no additional weight); (4) model prison inmate (some weight); and (5) entered prison at a young age (little weight). The trial court concluded that "[m]ore mitigation could have been available if the Defendant would have chosen to allow its presentation, but he has lawfully elected not to do so."
[3] Grim raised the following claims on direct appeal: (1)(a) the trial court erred by giving great weight to the jury's recommendation; (1)(b) the trial court should have required special counsel to present mitigation evidence to the penalty-phase jury; (2) the trial court abused its discretion in failing to call Dr. Larson (mental health expert) as its own witness; and (3) the trial court abused its discretion and violated Grim's due process rights when it refused to allow him to present the victim's hearsay statements.
[4] These claims include: (1) violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), related to (A) failure to disclose information related to the suspension of Dr. Michael Berkland, a pathologist, from practice in Missouri; (B) failure to disclose knowledge that a neighbor of the victim had committed several burglaries in the area; (C) failure to disclose a letter from Donald Ramsey detailing Grim's excessive drug and alcohol use; (D) failure to disclose the entirety of the surveillance tape from the bait shop; and (E) cumulative analysis of the withheld evidence; (2) ineffective assistance of guilt-phase counsel related to (A) failure to move for disqualification of the trial judge; (B) failure to present a voluntary intoxication and poly-use of prescribed drugs defense; (C) failure to use an independent medical examiner; (D) improper comments to the court regarding Grim's desire not to argue for lesser included offenses; (E) failure to adequately cross-examine Detective Davis; (F) failure to attack the State's evidence that Grim disposed of the victim's body on the Pensacola Bay Bridge; (G) failure to object to admissibility of evidence of blood from Grim's bedroom and vehicle; (H) failure to argue cross-contamination of the items in the cooler; (I) failure to argue that law enforcement analysis could not link a tampon found in the cooler to the victim; (J) failure to argue that physical evidence at the scene was not the responsibility of Grim; (K) failure to point out that Lynch indicated Campbell was not wearing socks, but she was wearing socks when discovered; (L) failure to point out an indication that there were two sets of tire tracks in Grim's backyard; (N) failure to adequately challenge the validity of the search warrant; and (O) failure to present the information underlying the Brady claims to the extent it was available to counsel; (3) ineffective assistance of penalty-phase and special counsel related to (A) failure to adequately investigate and present available mitigation, which rendered Grim's waiver of mitigation uninformed; (B) failure to advise Grim of his right to waive a jury advisory sentence; and (C) failure to object to a prejudicial comment from a trial spectator; (4) special counsel had an undisclosed conflict of interest; (5) Florida's capital sentencing scheme is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and (6) cumulative errors deprived Grim of a fundamentally fair trial.
[5] Despite the revocation of his license in Missouri, at the time of trial Berkland was licensed to perform autopsies in Florida.
[6] The State argues this claim is waived. See § 38.02, Fla. Stat. (2000) ("[S]uggestions [of disqualification] shall be filed in the cause within 30 days after the party filing the suggestion, or the party's attorney, or attorneys, of record, or either of them, learned of such disqualification, otherwise the ground, or grounds, of disqualification shall be taken and considered as waived."); Schwab v. State, 814 So.2d 402, 408 (Fla.2002) (noting that the defendant, "with the advice of counsel, waived his right to file a motion to recuse the judge, having specific knowledge of the allegations of judicial bias"). Because the claim, on its merits, is refuted by the record, we decline to address whether the claim was waived. See Mansfield v. State, 911 So.2d 1160, 1170 (Fla.2005).
[7] Hill's testimony at the evidentiary hearing was that "more than one" witness saw Grim at the pier. At trial, two witnesses placed Grim in the area.