# Supreme Court of Florida

_____

No. SC20-1862
_____

**THOMAS H. FLETCHER,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

July 7, 2022

PER CURIAM.

Thomas H. Fletcher appeals his judgment of conviction of first-degree murder and his sentence of death. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons below, we affirm Fletcher's conviction and sentence of death.

## I. Background

In September 2018, while serving a life sentence for the 1994 first-degree murder of Milton Grossman, Fletcher strangled his cellmate Kenneth Davis to death in their cell at the Blackwater River Correctional Facility. Fletcher, who confessed to killing Davis

to a Florida Department of Law Enforcement (FDLE) special agent and in letters he wrote to the trial court, was indicted for first-degree premeditated murder in March 2019. As explained in the trial court's sentencing order:

> On August 29, 2019, [Fletcher] pled guilty to first-degree murder in open court, which the Court accepted. At the same time, [Fletcher] informed the Court of his decisions to waive a penalty phase jury, to not challenge the imposition of the death penalty, and to refuse to present mitigation, a position that he has consistently maintained throughout these proceedings. The Court found that [Fletcher]'s waivers were knowingly and voluntarily made and directed the Department of Corrections to prepare a comprehensive presentence investigation report (PSI) in accordance with *Muhammad v. State*, 782 So. 2d 343, 363-64 (Fla. 2001). After reviewing the PSI and other mitigating evidence submitted by the State and defense counsel, the Court appointed special counsel to represent the public interest in bringing forth all available mitigation for the Court's benefit . . . .

Following Fletcher's guilty plea, the case proceeded to a penalty phase. On June 18, 2020, the court confirmed Fletcher's waiver of a penalty-phase jury and his wish for his appointed counsel not to present evidence in mitigation. The State presented the testimony of several witnesses and introduced several exhibits in support of the following aggravators it sought to establish: (1) "capital felony was committed by a person previously convicted of a

felony and under a sentence of imprisonment"; (2) Fletcher "was previously convicted of another capital felony"; (3) "capital felony was especially heinous, atrocious or cruel" (HAC); and (4) "capital felony was a homicide and was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification" (CCP).

Among the State's witnesses was the FDLE special agent who conducted the interview—published in court with no objection—during which Fletcher confessed, "I did kill Kenny Davis. I strangled him." The State also presented testimony from the pathologist, who performed Davis's autopsy, identified possible defensive wounds on several parts of Davis's body, and concluded that Davis's cause of death was manual asphyxiation.

The State's exhibits included three letters written by Fletcher addressed to various individuals at the Santa Rosa County Courthouse confessing to Davis's murder. These letters were received and read into the record without objection.

The special counsel, whom the trial court appointed, summarized the mitigation contained in the record regarding Davis's murder, including from Department of Corrections (DOC)

records and an FDLE investigative report. Special counsel also summarized relevant mitigation from Fletcher's 1995 trial for the murder of Milton Grossman in 1994. Among the evidence summarized, special counsel indicated that as a minor Fletcher experienced (1) physical and sexual abuse; (2) physical and emotional neglect; and (3) drug addiction. Special counsel also noted that, as an inmate, Fletcher regularly tested positive for drugs and was suicidal.

After the State rested, Fletcher elected not to present a closing argument and both the State and Fletcher agreed that a *Spencer*[1] hearing was unnecessary.

As the trial court explained in the sentencing order, the penalty-phase evidence established that:

> [Fletcher] determined that he wanted to escape the hard life of prison. Because he was unable to commit suicide, [Fletcher] decided that the easiest way to accomplish his "retirement plan" was to kill [Davis] a fellow inmate and have the death penalty imposed on him. [Fletcher] accomplished this through careful planning, choking his cellmate to death despite his cellmate's obvious attempts to escape death. [Fletcher] does not lack intelligence or an ability to understand the nature of his actions.

---

1. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

The trial court sentenced Fletcher to death for the first-degree murder of Davis on November 24, 2020. In so doing, the trial court found that the State had proven beyond a reasonable doubt all four of its proposed aggravators—under sentence of imprisonment, prior violent felony, HAC, and CCP—and assigned great weight to each aggravator.

As for mitigating factors, the trial court found no statutory mitigators; however, the trial court found and assigned the noted weight to the following ten nonstatutory mitigating circumstances proved by the greater weight of the evidence, namely that Fletcher was: (1) physically and sexually abused as a child (some weight); (2) raised by an alcoholic mother (slight weight); (3) raised in an unstable home life (slight weight); (4) protective of his sister who was being abused (some weight); (5) a provider for his sister (slight weight); (6) exposed to alcohol and illegal drugs at a young age and became an addict (some weight); (7) found to possess an artistic talent and has demonstrated a desire to develop this ability in the past (very slight weight); (8) found to have lost all hope (very slight weight); (9) cooperative with law enforcement (very slight weight); and (10) respectful and courteous in court (very slight weight).

As to the sufficiency and weighing findings, the trial court found that "sufficient aggravating factors exist to warrant the death penalty . . . that the aggravating factors far outweigh the mitigating circumstances and that a sentence of death, rather than life, is appropriate."

Fletcher now appeals.

## II. Analysis

In this direct appeal, Fletcher argues that the trial court erred in sentencing him to death for two reasons: (1) the trial court failed to ensure that all available mitigation was developed and presented, and (2) the trial court failed to determine beyond a reasonable doubt that the aggravating factors were sufficient to justify death and outweighed the mitigating circumstances. Though not raised as an issue, we also review Fletcher's guilty plea to first-degree murder.

### 1. Mitigation

Although Fletcher instructed his appointed counsel not to present mitigation below, he now argues on appeal that even though the trial court followed the "formalities of a presentence investigation report and the appointment of special counsel," it

erred in "ensur[ing] that all available mitigation was considered." Because this argument was raised for the first time on appeal, we review the trial court's rulings regarding mitigation for fundamental error. *See Craft v. State*, 312 So. 3d 45, 56 n.6 (Fla. 2020) (explaining that unpreserved errors are reviewed for fundamental error).

We have "repeatedly recognized the right of a competent defendant to waive presentation of mitigating evidence." *Koon v. Dugger*, 619 So. 2d 246, 249 (Fla. 1993). However, we have also held that a capital defendant's mitigation waiver "does not eliminate the court's responsibility to consider mitigating evidence in the record." *Bell v. State*, 336 So. 3d 211, 217 (Fla. 2022) (citing *Sparre v. State*, 164 So. 3d 1183, 1196 (Fla. 2015)). And, in cases like Fletcher's where a capital defendant entirely waives the presentation of mitigation, we require the trial court to order a "comprehensive" PSI that "include[s] information such as previous mental health problems (including hospitalizations), school records, and relevant family background." *Muhammad*, 782 So. 2d at 363; *see also* Fla. R. Crim. P. 3.710(b) (adopting the *Muhammad* standard). We have further left it within the trial court's discretion

to appoint special counsel. *See Marquardt v. State*, 156 So. 3d 464, 491 (Fla. 2015) (holding that "[i]f the PSI and the accompanying records alert the trial court to the probability of significant mitigation, the trial court has the discretion . . . to appoint an independent, special counsel"); *Robertson v. State*, 187 So. 3d 1207, 1214 (Fla. 2016) ("[A]ppoint[ing] special counsel [is] a matter within the court's discretion.") (citing *Sparre*, 164 So. 3d at 1198-99).

Here, Fletcher argues that special counsel presented outdated mitigation from the proceedings related to Fletcher's 1994 murder of Grossman and failed to explore Fletcher's "drug use and suicidal ideation" as it relates to Davis's murder. Fletcher faults the trial court for failing to order further development of the mitigation concerning his adverse childhood experiences and his "drug use and suicidal ideation." We disagree that fundamental error occurred.

The record shows that, faced with Fletcher's election not to present mitigation, the trial court complied with our precedent. The trial court ordered a comprehensive PSI, which contained required information like Fletcher's "criminal, educational, work, and family history" and referenced Fletcher's prior suicide attempt,

notwithstanding Fletcher's refusal to participate in the PSI's preparation. *See Bell*, 336 So. 3d at 215 n.7 (finding that even though "the PSI was not particularly thorough, it included the type of information a comprehensive PSI requires"). Further, as the sentencing order explicitly states, the trial court considered the mitigating evidence from the PSI. *See Hojan v. State*, 3 So. 3d 1204, 1216-17 (Fla. 2009) (finding that the trial court "consider[ed] the PSI report as it was required to do" since the "sentencing order specifically states that a PSI was ordered").

Moreover, after exercising its discretion to appoint special counsel, *see Marquardt*, 156 So. 3d at 491, the record is also clear that the trial court considered the mitigation presented by special counsel. Specifically, in the sentencing order, the trial court stated that "most of the mitigation [was] gleaned from special counsel's summary." Indeed, over half of the mitigating circumstances found by the trial court relate to Fletcher's traumatic childhood experiences, which were documented when Fletcher was an adult in connection with Fletcher's 1994 murder of Grossman. Additionally, special counsel discussed and the trial court explicitly considered Fletcher's drug use in prison and "the fact that [Fletcher] had told

other inmates that he wanted to die." Although Fletcher faults the sufficiency of special counsel's presentation and argues that the trial court erred by not requiring special counsel to do more to develop mitigation, he does not identify any mitigation that the trial court failed to consider. *See Muhammad*, 782 So. 2d at 363 ("emphasiz[ing] the duty of the trial court to consider *all* mitigating evidence 'contained anywhere in the record, to the extent it is believable and uncontroverted' ") (quoting *Farr v. State*, 621 So. 2d 1368, 1369 (Fla. 1993)); *see also Grim v. State*, 971 So. 2d 85, 102 (Fla. 2007) (finding that "the appointment of special counsel is solely at the discretion of the trial court" and "a defendant has no basis for claiming that special counsel's presentation of mitigation evidence was ineffective"). Furthermore, to the extent Fletcher claims fundamental error because the trial court did not appoint experts to assist special counsel with developing and presenting mitigation, Fletcher's trial counsel stated that there was "no need for [special counsel] to seek to have experts appointed, because the defendant simply will not cooperate."

Accordingly, because on these facts we find no fundamental error in the trial court's rulings regarding mitigation, Fletcher is not entitled to relief.

## 2. Sufficiency of Findings

Fletcher also challenges his death sentence on the ground that, in sentencing him to death, the trial court failed to determine beyond a reasonable doubt that the aggravating factors were sufficient to justify death and outweighed the mitigating circumstances. However, as Fletcher properly concedes in his initial brief, we have repeatedly rejected this argument. *See Newberry v. State*, 288 So. 3d 1040, 1047 (Fla. 2019) (holding that sufficiency and weighing determinations "are not subject to the beyond a reasonable doubt standard of proof"); *see also Craft*, 312 So. 3d at 57 (finding that this Court has "repeatedly" rejected arguments that "that the trial court fundamentally erred by failing to determine beyond a reasonable doubt that the aggravating factors were sufficient to justify the death penalty"). As in prior cases, we decline in Fletcher's case to "revisit what has been settled: only the existence of a statutory aggravating factor must be found

beyond a reasonable doubt." *McKenzie v. State*, 333 So. 3d 1098, 1105 (Fla. 2022).

### 3. Guilty Plea

Finally, we review Fletcher's guilty plea to first-degree murder. *See* Fla. R. App. P. 9.142(a)(5); *Tanzi v. State*, 964 So. 2d 106, 121 (Fla. 2007). This review requires us "to scrutinize the plea to ensure that the defendant [1] was made aware of the consequences of his plea, [2] was apprised of the constitutional rights he was waiving, and [3] pled guilty voluntarily." *Ocha v. State*, 826 So. 2d 956, 965 (Fla. 2002). Additionally, we "review the relevant factual basis for the plea." *Bell*, 336 So. 3d at 218 (citing *Doty v. State*, 170 So. 3d 731, 739 (Fla. 2015)).

Here, the record shows that Fletcher knowingly, intelligently, and voluntarily entered his guilty plea. First, Fletcher was made aware of the consequences of his plea and indicated he understood the consequences and the conditions of the plea agreement. Second, Fletcher was apprised of the constitutional rights he was waiving. The trial court asked and Fletcher affirmed that he "read over the plea agreement" and "underst[ood] all the terms and conditions" which stated, among other things, that Fletcher was

waiving: (1) "the privilege against self-incrimination;" (2) "the right to a jury trial;" and (3) "the right to confront [his] accusers." *Godinez v. Moran*, 509 U.S. 389, 397 n.7 (1993) (explaining that three constitutional rights are waived when defendants plead guilty). Third, the trial court asked, and Fletcher confirmed, that he pled guilty voluntarily. Finally, the "factual basis for the plea," which was agreed to by Fletcher, is sufficient to support the first-degree murder conviction. *Doty*, 170 So. 3d at 739.

### III. Conclusion

For the foregoing reasons, we affirm Fletcher's first-degree murder conviction and sentence of death.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, LAWSON, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

For the reasons expressed in my dissenting opinion in *Lawrence v. State*, 308 So. 3d 544 (Fla. 2020) (receding from

- 13 -

proportionality review requirement in death penalty direct appeal cases), I can only concur in the result.

An Appeal from the Circuit Court in and for Santa Rosa County,
James Scott Duncan, Judge
Case No. 572019CF000526CFAXMX

Jessica J. Yeary, Public Defender, and Barbara J. Busharis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

    for Appellant

Ashley Moody, Attorney General, and Michael T. Kennett, Assistant Attorney General, Tallahassee, Florida, and Jennifer A. Davis, Assistant Attorney General, Miami, Florida,

    for Appellee